**SEALED**

FILED

2012 FEB 14  AM 10: 20

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ROLANDO "BLACK RABBIT" MUNIZ (1),<br>ANDREW "DIRTY" VIDAURRI (2),<br>TIMOTHY "KILO" JIMENEZ (3),<br>RUBEN "RC" CARRANZA (4),<br>ANSELMO "ELMO" NIETO (5),<br>ROBERTO "RICO" RODRIGUEZ (7),<br>JERRY "PELON" DONEL (8),<br>LEROY "CAVEMAN" MACIEL (9),<br>NICOLAS "STRAPS" BLANCO (10),<br>FERNANDO "LI'L FERN" GONZALEZ<br>(11),<br>RAMIRO "RAM" DE LA ROSA (12),<br>MANUEL MANCHA (13),<br>MARK ANTHONY "JAX" JIMENEZ (14),<br>FRANCISCO "PANCHO" ARROYO (15),<br>ADAM "ROOKIE" CHAVEZ (16),<br>ALEJANDRO "ALEX KENWOOD"<br>FLORES (17),<br>RUDY "PISTO" DELGADO (18),<br>MARK MENA (19), and<br>MARK "DIRTY BOY" NUNCIO (20)<br><br>    Defendants. | CRIM. NO. SA-11-CR-0675 FB<br><br>S E C O N D<br>S U P E R S E D I N G<br>I N D I C T M E N T<br><br>[■Vio: 18 U.S.C. § 1962: Conspiracy<br>to Conduct the Affairs of an<br>Enterprise Through a Pattern of<br>Racketeering;<br>■Vio: 18 U.S.C. § 1959(a)(1),(5):<br>Violent Crime in Aid of<br>Racketeering] |

THE GRAND JURY CHARGES:

**COUNT ONE**
[18 U.S.C. § 1962(d)]
**[Conspiracy to Conduct the Affairs of an Enterprise Through a Pattern of Racketeering]**

A.    **The Racketeering Enterprise**

1.     There existed within the Western District of Texas and elsewhere, a criminal organization known as the Texas Syndicate, whose members and associates engaged in murders, attempted murders, conspiracies to commit murder, drug-trafficking, and other crimes.

2.     The Texas Syndicate criminal organization, including its leadership, members, and associates, constituted an "enterprise" as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of attaining the objectives of the enterprise.

3.     The Texas Syndicate originated during the 1970s as a response by native Texas inmates to other prison gangs.  The Texas Syndicate was also known as "*Sindicato Tejano*" and "*ESE TE*."  The Texas Syndicate was a dominant prison gang in the State of Texas and was also recognized nationally as a major prison gang.  The gang had a presence throughout Texas through members and associates who resided in various cities and towns or who were in custody in various Texas jails and prison units.

4.     Texas Syndicate members commonly referred to each other as "*carnal*" (which is a colloquial Spanish term for brother) and maintained a distinct identity by operating as a secretive group and excluding nonmembers from participating in its meetings, its secret communications, much of its criminal activity, and knowledge of its inner workings.  The Texas Syndicate membership established and enforced specific formal rules and adopted as its gang sign the image of the horns of the Texas longhorn. Very often Texas Syndicate members wore distinct tattoos such as longhorns or an 'S' superimposed over a 'T.'  Some members of the Texas Syndicate members avoided visible

2

gang tattoos to avoid detection by law enforcement and prison officials.

5.     A Texas Syndicate recruit was called a "*prospecto*" (prospect). The *prospecto* was required to complete a probationary period before achieving "*carnalismo*" or full membership.  Often the *prospecto* had to carry out a violent act, including the murder of a gang enemy, to become a full Texas Syndicate member.  Persons who supported the Texas Syndicate but were neither full members nor *prospectos* were often referred to as "*firme*" or "*esquinas*," which was used by members to mean "in our corner."

6.     Members of the Texas Syndicate were bound by a set of strict rules which ensured loyalty to the enterprise.  The rules required that a member continue his participation in the organization even after his release from prison.  No member was permitted to separate himself from the group because membership was for life.  Any violation of the rules could result in harsh penalties, including death.  A member found to have violated Texas Syndicate rules could lose his good standing and become known as a "*muleta*." (The Spanish term "*muleta*" literally means "crutch" but was used by the Texas Syndicate membership to refer to either a person targeted for murder or an assignment to murder someone.)  Mandatory and strict compliance with enterprise rules, and harsh discipline for violation of these rules, ensured that the Texas Syndicate membership maintained discipline in its ranks and that the organization functioned as a cohesive and continuing unit.

7.     The Texas Syndicate rules provided that its interests would come before all else, including a member's family.  A member or prospect of the Texas Syndicate instructed to commit a homicide or some other crime for the Texas Syndicate was required to do so regardless of any relationship to the victim.  The order had to be carried out without delay, usually within two weeks.

8.     The Texas Syndicate enterprise had a leadership hierarchy.  A top-ranking member was

known as a "*sillon*," which translates roughly to a chairman.  Other ranks included captain, lieutenant, and sergeant, while regular members were referred to as soldiers. Each city and detention facility, or prison unit, typically had a *sillon*.  The leadership within the Texas state prison system was often run out of the Coffield Unit of the Texas Department of Criminal Justice, commonly referred to by Texas Syndicate members as "Africa."

9.     The membership of the Texas Syndicate organization used violence to create fear and intimidation in nonmembers.  This fear allowed Texas Syndicate members to dominate nonmembers and to compete with other gangs in criminal activities, such as the drug trade.  Violent retribution was an important part of intimidation by the enterprise.  Such retribution helped enforce loyalty to the organization by its membership, which was necessary to ensure compliance with its rules and criminal activities.

10.     Although the Texas Syndicate was a national enterprise with an established hierarchy and leadership, and with established formal rules, its members developed geographical components to better serve the criminal aims of the organization.  Each of these geographical components had some autonomy in deciding how they would achieve their criminal aims, as long as they did not stray too far from the governing rules of the organization.

**B.     The Principal Objectives**

11.     The purposes of the enterprise known as the Texas Syndicate included the following:

> a.  To enrich its members through criminal activities consisting principally of drug trafficking;
>
> b.  To preserve and protect the power and profits of the Texas Syndicate through a pattern of racketeering that included the use of intimidation, violence, threats of violence, assault, and murder;

    c.  To promote and enhance the Texas Syndicate and its members' activities; and

    d.  To keep its victims and rivals in fear of the Texas Syndicate members through violence and threats of violence.

## C.  Manner and Means

12.  Among the means and methods by which the Defendants and their associates conducted and

participated in the conduct of the affairs of the enterprise were the following:

    a.  Members of the enterprise and their associates committed crimes to achieve the enterprise's goal to make money and to enforce the rules of the organization.

    b.  Members of the enterprise and their associates violently victimized members and former members who violated organization rules, codes, and traditions.

    c.  Members of the enterprise and their associates violently victimized nonmembers who offended or angered enterprise members and associates in order to maintain its reputation for violence and to intimidate others.

    d.  Members of the enterprise and their associates used violence and the fear of violence to maintain strict discipline among the membership and associates in order to preserve the strength of this criminal enterprise and to discourage dissent and violation of rules, to encourage group secrecy, and to make much less likely any action by anyone that endangered the criminal aims of the organization.

## D.  The Defendants

13.  During the relevant time periods the Defendants:

          **ROLANDO "BLACK RABBIT" MUNIZ (1),**
          **ANDREW "DIRTY" VIDAURRI (2),**
          **TIMOTHY "KILO" JIMENEZ (3),**
          **RUBEN "RC" CARRANZA (4),**
          **ANSELMO "ELMO" NIETO (5),**
          **ROBERTO "RICO" RODRIGUEZ (7),**
          **JERRY "PELON" DONEL (8),**
          **LEROY "CAVEMAN" MACIEL (9),**
          **NICOLAS "STRAPS" BLANCO (10),**
          **FERNANDO "LI'L FERN" GONZALEZ (11),**
          **RAMIRO "RAM" DE LA ROSA (12),**
          **MANUEL MANCHA (13),**

> MARK ANTHONY "JAX" JIMENEZ (14),
> FRANCISCO "PANCHO" ARROYO (15),
> ADAM "ROOKIE" CHAVEZ (16), and
> ALEJANDRO "ALEX KENWOOD" FLORES (17),
> RUDY "PISTO" DELGADO (18),
> MARK MENA (19), and
> MARK "DIRTY BOY" NUNCIO (20)

were members, prospects, and others associated with the Texas Syndicate.

E.    **The Racketeering Conspiracy**

14.    The Grand Jury incorporates by reference paragraphs 1 through 13 as though fully restated

and re-alleged here.

15.    Beginning in January 2008, the exact date being unknown to the Grand Jury, and continuing

thereafter up to the date of the Second Superseding Indictment, in the Western District of Texas and

elsewhere, the Defendants,

> ROLANDO "BLACK RABBIT" MUNIZ (1),
> ANDREW "DIRTY" VIDAURRI (2),
> TIMOTHY "KILO" JIMENEZ (3),
> RUBEN "RC" CARRANZA (4),
> ANSELMO "ELMO" NIETO (5),
> ROBERTO "RICO" RODRIGUEZ (7),
> JERRY "PELON" DONEL (8),
> LEROY "CAVEMAN" MACIEL (9),
> NICOLAS "STRAPS" BLANCO (10),
> FERNANDO "LI'L FERN" GONZALEZ (11),
> RAMIRO "RAM" DE LA ROSA (12),
> MANUEL MANCHA (13),
> MARK ANTHONY "JAX" JIMENEZ (14),
> FRANCISCO "PANCHO" ARROYO (15),
> ADAM "ROOKIE" CHAVEZ (16), and
> ALEJANDRO "ALEX KENWOOD" FLORES (17),

together with others known and unknown to the Grand Jury, being persons employed by and

associated with the enterprise known as the Texas Syndicate, which enterprise was engaged in, and

the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally, did combine, conspire, confederate, and agree together and with each other and with others known and unknown to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, which pattern is set forth more fully in paragraphs 18 through 24 of this Second Superseding Indictment.

16.     It was a further part of the conspiracy that each Defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

**F. The Pattern of Racketeering Activity**

17.     The pattern of racketeering activity, as that term is defined by 18 U.S.C. §1961(1) & (5), through which the Defendants agreed to conduct and participate in the conduct of the affairs of the enterprise consisted of the following:

18.     Racketeering Act One (Murder and Conspiracy to Murder George Escobedo):

        The Defendant named below committed the following acts, either of which alone constitutes Racketeering Act One:

              a.     On or about October 25, 2008, in the Western District of Texas, the Defendant,

**ANDREW "DIRTY" VIDAURRI (2),**

and others, aided and abetted by each other, did commit an act involving murder, that is, did then and there intentionally and knowingly cause the death of an individual, namely, George Escobedo, by shooting him with a firearm, in violation of Texas Penal Code Sections 7.01, 7.02, and 19.02.

              b.     On or about October 25, 2008, in the Western District of Texas, the

7

Defendant,

**ANDREW "DIRTY" VIDAURRI (2),**

and others, did commit an act involving murder, that is, with the intent that murder, a felony, be committed, did agree with others that at least one of them would engage in conduct that would constitute said offense, to-wit: shooting and killing George Escobedo, and at least one of them performed an overt act in pursuance of said agreement, to-wit: shooting George Escobedo, in violation of Texas Penal Code Sections 19.02 and 15.02.

19.     Racketeering Act Two (Murder and Conspiracy to Murder George Davenport):

The Defendant named below committed the following acts, either of which alone constitutes Racketeering Act Two:

    a.     On or about October 28, 2008, in the Western District of Texas, the Defendant,

**ANDREW "DIRTY" VIDAURRI (2),**

and others, aided and abetted by each other, did commit an act involving murder, that is, did then and there intentionally and knowingly cause the death of an individual, namely, George Davenport, by shooting him with a firearm and striking him with a blunt object, in violation of Texas Penal Code Sections 7.01, 7.02, and 19.02.

    b.     On or about October 28, 2008, in the Western District of Texas, the Defendant,

**ANDREW "DIRTY" VIDAURRI (2),**

and others, did commit an act involving murder, that is, with the intent that murder, a felony, be committed, did agree with others that at least one of them would engage in conduct that would

constitute said offense, to-wit: shooting, beating, and killing George Davenport, and at least one of

them performed an overt act in pursuance of said agreement, to-wit: shooting and beating George

Davenport, in violation of Texas Penal Code Sections 19.02 and 15.02.

20.     Racketeering Act Three (Conspiracy to Murder Members of the Tango Orejon/Orejones
        Gang)

        From at least September 30, 2009 until on or about July 2, 2011, in the Western District of

Texas, and elsewhere, the Defendants,

> **ANDREW "DIRTY" VIDAURRI (2),**
> **ANSELMO "ELMO" NIETO (5),**
> **ROBERTO "RICO" RODRIGUEZ (7),**
> **NICHOLAS "STRAPS" BLANCO (10),**
> **RAMIRO "RAM" DE LA ROSA (12), and**
> **ALEJANDRO "ALEX KENWOOD" FLORES (17),**

and others, did commit an act involving murder, that is, with the intent that murder, a felony, be

committed, did agree with others that at least one of them would engage in conduct that would

constitute said offense, to-wit: killing any member of the Tango Orejon/Orejones gang, and at least

one of them performed an overt act in pursuance of said agreement, to-wit: shooting at least one

suspected member of Tango Blast/Orejones gang, in violation of Texas Penal Code Sections 19.02

and 15.02.

21.     Racketeering Act Four (Attempt to Murder Rodolfo Gonzalez)

        On or about March 22, 2011, in the Western District of Texas, the Defendants,

> **ANDREW "DIRTY" VIDAURRI (2),**
> **ANSELMO "ELMO" NIETO (5),**

and others, did commit an act involving murder, that is, did then and there intentionally and

knowingly attempt to cause the death of an individual, namely, Rodolfo Gonzalez, by shooting

Rodolfo Gonzalez with a firearm, in violation of Texas Penal Code Sections 7.01, 7.02, 15.01, and 19.02.

22.     Racketeering Act Five (Attempt to Murder Miguel Ojeda)

On or about March 25, 2011, in the Western District of Texas, the Defendants,

**ANDREW "DIRTY" VIDAURRI (2),**
**NICHOLAS "STRAPS" BLANCO (10),**
**ALEJANDRO "ALEX KENWOOD" FLORES (17),**

and others, did commit an act involving murder, that is, did then and there intentionally and knowingly attempt to cause the death of an individual, namely, Miguel Ojeda, by shooting at Miguel Ojeda with at least one firearm, in violation of Texas Penal Code Sections 7.01, 7.02, 15.01, and 19.02.

23.     Racketeering Act Six (Murder and Conspiracy to Murder Troy Lambirth):

The Defendants named below committed the following acts, either of which alone constitutes Racketeering Act Six:

a.      On or about March 26, 2011, in the Western District of Texas, the Defendants,

**ANDREW "DIRTY" VIDAURRI (2), and**
**RAMIRO "RAM" DE LA ROSA (12),**

did commit an act involving murder, that is, did then and there intentionally and knowingly cause the death of an individual, namely, Troy Lambirth, by shooting him with a firearm, in violation of Texas Penal Code Sections 7.01, 7.02, and 19.02.

b.      On or about March 26, 2011, in the Western District of Texas, the Defendants,

**ANDREW "DIRTY" VIDAURRI (2), and**
**RAMIRO "RAM" DE LA ROSA (12),**

did commit an act involving murder, that is, with the intent that murder, a felony, be committed, did

10

agree with others that at least one of them would engage in conduct that would constitute said offense, to-wit: shooting and killing Troy Lambirth, and at least one of them performed an overt act in pursuance of said agreement, to-wit: shooting Troy Lambirth, in violation of Texas Penal Code Sections 19.02 and 15.02.

24.    Racketeering Act Seven (Murder of Priscilla Ann Vidaurri):

On or about July 2, 2011, in the Western District of Texas, the Defendants,

> **ROLANDO "BLACK RABBIT" MUNIZ (1),**
> **TIMOTHY "KILO" JIMENEZ (3),**
> **RUBEN "RC" CARRANZA (4),**
> **ANSELMO "ELMO" NIETO (5),**
> **JERRY "PELON" DONEL (8),**
> **LEROY "CAVEMAN" MACIEL (9)**
> **MANUEL MANCHA (13),**
> **MARK ANTHONY "JAX" JIMENEZ (14),**
> **FRANCISCO "PANCHO" ARROYO (15),**
> **ADAM "ROOKIE" CHAVEZ (16),**

and others, did commit an act involving murder, that is, did then and there intentionally and knowingly cause the death of an individual, namely, Priscilla Ann Vidaurri, by shooting her with a firearm, in violation of Texas Penal Code Sections 7.01, 7.02, and 19.02.

25.    Racketeering Act Eight (Conspiracy to Murder, and Attempted Murder of, Andrew Vidaurri)

The Defendants named below committed the following acts, either of which alone constitutes Racketeering Act Eight:

a.    From on or about June 2, 2011 until on or about July 2, 2011, in the Western District of Texas, the Defendants,

> **ROLANDO "BLACK RABBIT" MUNIZ (1),**
> **TIMOTHY "KILO" JIMENEZ (3),**
> **RUBEN "RC" CARRANZA (4),**
> **ANSELMO "ELMO" NIETO (5),**

> **JERRY "PELON" DONEL (8),**
> **LEROY "CAVEMAN" MACIEL (9),**
> **MANUEL MANCHA (13),**
> **MARK ANTHONY "JAX" JIMENEZ (14),**
> **FRANCISCO "PANCHO" ARROYO (15),**
> **ADAM "ROOKIE" CHAVEZ (16),**

and others, did commit an act involving murder, that is, with the intent that murder, a felony, be committed, did agree with others that at least one of them would engage in conduct that would constitute said offense, to-wit: shooting and killing Andrew Vidaurri, and at least one of them performed an overt act in pursuance of said agreement, to-wit: shooting at a person believed to be Andrew Vidaurri, in violation of Texas Penal Code Sections 19.02 and 15.02.

      b.     On or about July 2, 2011, in the Western District of Texas, the Defendants,

> **ROLANDO "BLACK RABBIT" MUNIZ (1),**
> **TIMOTHY "KILO" JIMENEZ (3),**
> **RUBEN "RC" CARRANZA (4),**
> **ANSELMO "ELMO" NIETO (5),**
> **JERRY "PELON" DONEL (8),**
> **LEROY "CAVEMAN" MACIEL (9),**
> **MANUEL MANCHA (13),**
> **MARK ANTHONY "JAX" JIMENEZ (14),**
> **FRANCISCO "PANCHO" ARROYO (15),**
> **ADAM "ROOKIE" CHAVEZ (16),**

and others, did commit an act involving murder, that is, did then and there intentionally and knowingly attempt to cause the death of an individual, namely, Andrew Vidaurri, by shooting Henry Vidaurri, a person they believed was Andrew Vidaurri, with a firearm, in violation of Texas Penal Code Sections 7.01, 7.02, 15.01, and 19.02.

26.    <u>Racketeering Act Nine (Conspiracy to Distribute Narcotics):</u>

     Beginning in the at least around January 2009, the exact date being unknown to the Grand Jury, and continuing to the date of this Second Superseding Indictment, in the Northern, Southern,

Eastern, and Western Districts of Texas, and other parts of the United States, the Defendants,

**ROLANDO "BLACK RABBIT" MUNIZ (1),**
**ANDREW "DIRTY" VIDAURRI (2),**
**TIMOTHY "KILO" JIMENEZ (3),**
**RUBEN "RC" CARRANZA (4),**
**ANSELMO "ELMO" NIETO (5),**
**ROBERTO "RICO" RODRIGUEZ (7),**
**JERRY "PELON" DONEL (8),**
**NICOLAS "STRAPS" BLANCO (10),**
**FERNANDO "LI'L FERN" GONZALEZ (11),**
**RAMIRO "RAM" DE LA ROSA (12),**
**MANUEL MANCHA (13),**
**MARK ANTHONY "JAX" JIMENEZ (14),**
**FRANCISCO "PANCHO" ARROYO (15),**
**ADAM "ROOKIE" CHAVEZ (16), and**
**ALEJANDRO "ALEX KENWOOD" FLORES (17),**

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together and with others known and unknown to distribute and to possess with intent to distribute a controlled substance, which offense involved a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

27.   Racketeering Act Ten (Conspiracy to Murder Javier "Fierro" Penuelaz):

Between on or about February 24, 2011 and on or about September 5, 2011, in the Western District of Texas, the Defendant,

**LEROY "CAVEMAN" MACIEL (9),**

did commit an act involving murder, that is, with the intent that murder, a felony, be committed, did agree with others that at least one of them would engage in conduct that would constitute said offense, to-wit: killing Javier Penuelaz, and at least one of them performed an overt act in pursuance

13

of said agreement, to-wit: looking for Javier Penuelaz with intent to kill him, in violation of Texas Penal Code Sections 19.02 and 15.02.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO
**[18 U.S.C. § 1959(a)(1); 18 U.S.C. § 2]**
**[Violent Crime in Aid of Racketeering: Murder of George Escobedo]**

1.      At all times relevant to this Second Superseding Indictment, the Texas Syndicate, as more fully described in Paragraphs 1-13 of this Second Superseding Indictment, which are re-alleged and incorporated by reference as though set forth fully herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely, the Texas Syndicate, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2.      At all times relevant to this Second Superseding Indictment, the above-referenced enterprise, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder, attempted murder, and conspiracy to commit murder, in violation of Texas Penal Code, Sections, 19.02, 7.01, 7.02, 15.01, and 15.02, and narcotics trafficking, in violation of Title 21, United States Code Sections 841 and 846.

3.      On or about October 25, 2008, in the Western District of Texas, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendant,

**ANDREW "DIRTY" VIDAURRI (2)**

14

and others, aided and abetted by each other, did unlawfully and knowingly murder George Escobedo, in violation of Texas Penal Code, Sections, 19.02 and 7.01.

All in violation of Title 18, United States Code, Section 1959(a)(1), and Section 2.

## COUNT THREE
### [18 U.S.C. § 1959(a)(1); 18 U.S.C. § 2]
### [Violent Crime in Aid of Racketeering: Murder of George Davenport]

1.      Paragraphs 1 and 2 of Count Two of this Second Superseding Indictment are re-alleged and are incorporated by reference as though fully set forth here.

2.      On or about October 28, 2008, in the Western District of Texas, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendant,

**ANDREW "DIRTY" VIDAURRI (2)**

and others, aided and abetted by each other, did unlawfully and knowingly murder George Davenport, in violation of Texas Penal Code, Sections, 19.02 and 7.01.

All in violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT FOUR
### [18 U.S.C. § 1959(a)(1); 18 U.S.C. § 2]
### [Violent Crime in Aid of Racketeering: Murder of Troy Lambirth]

1.      Paragraphs 1 and 2 of Count Two of this Second Superseding Indictment are re-alleged and are incorporated by reference as though fully set forth here.

2.      On or about March 26, 2011, in the Western District of Texas, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendants,

**ANDREW "DIRTY" VIDAURRI (2),**

**RAMIRO "RAM" DE LA ROSA (12),**

aided and abetted by each other, did unlawfully and knowingly murder Troy Lambirth, in violation

of Texas Penal Code, Sections, 19.02 and 7.01.

All in violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT FIVE
### [18 U.S.C. § 1959(a)(1); 18 U.S.C. § 2]
### [Violent Crime in Aid of Racketeering: Murder of Priscilla Ann Vidaurri]

1.      Paragraphs 1 and 2 of Count Two of this Second Superseding Indictment are re-alleged and

are incorporated by reference as though fully set forth here.

2.      On or about July 2, 2011, in the Western District of Texas, for the purpose of gaining

entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged

in racketeering activity, the Defendants,

> **ROLANDO "BLACK RABBIT" MUNIZ (1),**
> **TIMOTHY "KILO" JIMENEZ (3),**
> **RUBEN "RC" CARRANZA (4),**
> **ANSELMO "ELMO" NIETO (5),**
> **JERRY "PELON" DONEL (8),**
> **LEROY "CAVEMAN" MACIEL (9)**
> **MANUEL MANCHA (13),**
> **MARK ANTHONY "JAX" JIMENEZ (14),**
> **FRANCISCO "PANCHO" ARROYO (15),**
> **ADAM "ROOKIE" CHAVEZ (16),**

aided and abetted by each other, did unlawfully and knowingly murder Priscilla Ann Vidaurri, in

violation of Texas Penal Code, Sections, 19.02 and 7.01.

All in violation of Title 18, United States Code, Section 1959(a)(1) and Section 2.

## COUNT SIX
### [18 U.S.C. § 1959(a)(5)]
### [Violent Crime in Aid of Racketeering: Conspiracy to Murder Tango Blast/Orejon Members]

16

1.     Paragraphs 1 and 2 of Count Two of this Second Superseding Indictment are re-alleged and are incorporated by reference as though fully set forth here.

2.     From at least September 30, 2009 until on or about July 2, 2011, in the Western District of Texas, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendants,

**ROLANDO "BLACK RABBIT" MUNIZ (1),
ANDREW "DIRTY" VIDAURRI (2),
ANSELMO "ELMO" NIETO (5),
ROBERTO "RICO" RODRIGUEZ (7),
NICHOLAS "STRAPS" BLANCO (10),
RAMIRO "RAM" DE LA ROSA (12),
ALEJANDRO "ALEX KENWOOD" FLORES (17),**

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together and with others known and unknown, to murder at least one other person, to wit: members of a group known as Tango Blast or *Orejones*, in violation of Texas Penal Code, Sections, 19.02 and 15.02.

All in violation of Title 18, United States Code, Section 1959(a)(5) .

## COUNT SEVEN
### [18 U.S.C. § 1959(a)(5)]
**[Violent Crime in Aid of Racketeering: Conspiracy to Murder Javier "Fiero" Penuelaz]**

1.     Paragraphs 1 and 2 of Count Two of this Second Superseding Indictment are re-alleged and are incorporated by reference as though fully set forth here.

2.     Between on or about February 24, 2011 and on or about September 5, 2011, in the Western District of Texas, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendant,

**LEROY "CAVEMAN" MACIEL (9)**

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together and with others known and unknown, to murder Javier "Fierro" Penuelaz,  in violation of Texas Penal Code, Sections, 19.02 and 15.02.

All in violation of Title 18, United States Code, Section 1959(a)(5).

**COUNT EIGHT**
**[18 U.S.C. § 1959(a)(5)]**
**[Violent Crime in Aid of Racketeering: Conspiracy to Murder One Unknown Male]**

1.     Paragraphs 1 through 2 Count Two of this Second Superseding Indictment are re-alleged and are incorporated by reference as though fully set forth here.

2.     Between on or about October 1, 2011 and the date of this Second Superseding Indictment, in the Western District of Texas, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in the Texas Syndicate, an enterprise engaged in racketeering activity, the Defendants,

> **MANUEL MANCHA (13),**
> **RUDY "PISTO" DELGADO (18),**
> **MARK MENA (19), and**
> **MARK "DIRTY BOY" NUNCIO (20)**

knowingly, intentionally, and unlawfully combined, conspired, confederated, and agreed together and with others known and unknown, to murder at least one unknown male,  in violation of Texas Penal Code, Sections, 19.02 and 15.02.

3.     In furtherance of this conspiracy, Defendants met on or about December 4, 2011 at the Broadway Bar in San Antonio, Texas, and discussed the said conspiracy

All in violation of Title 18, United States Code, Section 1959(a)(5).

**NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE**

# I.
## RICO Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1962; subject to forfeiture pursuant to
### Title 18 U.S.C. §§ 1963(a)(1), (a)(2), and (a)(3).  See Fed. R. Crim. P. 32.2]

As a result of the foregoing criminal violations set forth in Count One, which are punishable by imprisonment for more than one year, Defendants ROLANDO "BLACK RABBIT" MUNIZ (1), ANDREW "DIRTY" VIDAURRI (2), TIMOTHY "KILO" JIMENEZ (3), RUBEN "RC" CARRANZA (4), ANSELMO "ELMO" NIETO (5), RAYMOND "MINOR" RAMIREZ (6), ROBERTO "RICO" RODRIGUEZ (7), JERRY "PELON" DONEL (8), LEROY "CAVEMAN" MACIEL (9), NICOLAS "STRAPS" BLANCO (10), FERNANDO "LI'L FERN" GONZALEZ (11), RAMIRO "RAM" DE LA ROSA (12), MANUEL MANCHA (13), MARK ANTHONY "JAX" JIMENEZ (14), FRANCISCO "PANCHO" ARROYO (15), ADAM "ROOKIE" CHAVEZ (16), and ALEJANDRO "ALEX KENWOOD" FLORES (17), shall forfeit to the United States pursuant to Title 18 U.S.C. §§ 1963(a)(1), (a)(2), and (a)(3), which state the following:

**Title 18 U.S.C. § 1963.**

    **(a)**    Whoever violates any provision of section 1962 of this chapter . . . shall forfeit to the United States . . . .

        **(1)**    any interest the person has acquired or maintained in violation of section 1962;

        **(2)**    any--

            (A)    interest in;

            (B)    security of;

            (C)    claim against; or

            (D)    property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

        **(3)**    any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The court, in imposing sentence on such person shall order . . . that the person forfeit to the United States all property described in this subsection.

This Notice of Demand for Forfeiture includes but is not limited to the property described in the paragraphs below.

## II.
## Real and Personal Properties

A.  All right, title, and interest of Defendants in the following real properties which are subject to forfeiture to the United States of America:

1.   Residence situated and located at **2431 Waverly, San Antonio, Bexar County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

   Lot E 4 FT of 25 & W 48 FT of 26, Block 16, New City Block 9236, City of San Antonio, Bexar County, Texas, according to the plat thereof recorded in Deed/Map and Plat Records of Bexar County, Texas.

2.   Real Property located at **4222 Culebra Rd., San Antonio, Bexar County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

   Lots 7 and 8, Block 1, New City Block 11998, LIFSHUTZ SUBDIVISION NO. 8, in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 2222, Page(s) 360, Deed and Plat Records of Bexar County, Texas.

3.   Residence situated and located at **2202 Fairburn, San Antonio, Bexar County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

   Lot 20, Block 13, New City Block 11453, Culebra Park, Unit 11, situated in the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 6400, Page 18, Deed and Plat Records of Bexar County, Texas.

4.   Residence situated and located at **5006 Bluff, San Antonio, Bexar County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

Lot 2, Block 27, New City Block 11467, City of San Antonio, Bexar County, Texas.

B.  All right, title, and interest of Defendants in the following personal properties is subject to forfeiture to the United States of America:

$40,290.00, More or Less, United States currency seized as proceeds on March 17, 2011.

## III.
## Money Judgment

As a result of the foregoing criminal violations set forth in Count One, Defendants shall

forfeit to the United States all right, title, and interest, pursuant to Fed. R. Crim. P. 32.2 and Title 18

U.S.C. § 1963(a)(3), in the following described Money Judgment of Forfeiture:

A sum of money equal to **$500,000.00 Thousand Dollars and No Cents ($500,000.00)**, which represents the amount of property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the violations set out in Count One, and for which Defendants ROLANDO "BLACK RABBIT" MUNIZ (1), ANDREW "DIRTY" VIDAURRI (2), TIMOTHY "KILO" JIMENEZ (3), RUBEN "RC" CARRANZA (4), ANSELMO "ELMO" NIETO (5), RAYMOND "MINOR" RAMIREZ (6), ROBERTO "RICO" RODRIGUEZ (7), JERRY "PELON" DONEL (8), LEROY "CAVEMAN" MACIEL (9), NICOLAS "STRAPS" BLANCO (10), FERNANDO "LI'L FERN" GONZALEZ (11), RAMIRO "RAM" DE LA ROSA (12), MANUEL MANCHA (13), MARK ANTHONY "JAX" JIMENEZ (14), FRANCISCO "PANCHO" ARROYO (15), ADAM "ROOKIE" CHAVEZ (16), and ALEJANDRO "ALEX KENWOOD" FLORES (17), are jointly and severally liable.

## IV.
## Substitute Assets

If any of the properties described above, as a result of any act or omission of Defendants:

a.     cannot be located upon the exercise of due diligence,
b.     has been transferred or sold to, or deposited with, a third person,
c.     has been placed beyond the jurisdiction of the Court,
d.     has been substantially diminished in value, or
e.     has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States of America to seek forfeiture of any other property, to include the

21

above-described properties, up to the value of the money judgment as substitute assets pursuant to

Title 21 U.S.C. § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL,

FOREPERSON

ROBERT PITMAN
United States Attorney

By:

JOEY CONTRERAS
Assistant United States Attorney

KAREN NORRIS
Assistant United States Attorney